IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION
IN ADMIRALTY


Carver Stevedoring Services, )
Inc.,                         )
                              )
    Plaintiff,          )
                              )
vs.                           ) Civil Action 2:20-cv-01344-DCN
                              )
M/V NAVIOS CHRISTINE B (IMO No.)
9496238), her engines, boilers,)
tackle, appurtenances, etc.,  )
*in rem*, and Imba maritime,  )
S.A., Coasters Ventures, Ltd., )
and Navios Maritime Partners, )
L.P., *in personam,*          )
                              )
    Defendants.         )
                              )
_____)     (NON-JURY)

<u>PLAINTIFF'S VERIFIED COMPLAINT</u>

COMES NOW Carver Stevedoring Services, Inc. (hereinafter "Carver Stevedoring") Plaintiff in the above captioned action, and, complaining of Defendants, shows this Honorable Court as follows:

<u>JURISDICTION</u>

1.    This is a case of negligence against the Defendant M/V NAVIOS CHRISTINE B (IMO No. 9496238) (hereinafter "Vessel") *in rem* pursuant to Rule C of the Supplemental Admiralty Rules and against Defendants Imba Maritime, S.A., Coasters Ventures,

1

Ltd., and Navios Maritime Partners, L.P., *in personam*, pursuant to Rule B of the same rules for issue of a writ of maritime attachment and is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure; Plaintiff invokes the original admiralty jurisdiction of this Honorable Court pursuant to 28 U.S.C. § 1333(1).

2. This case is governed by the Rules B and C of the Supplemental Admiralty Rules of the Federal Rules of Civil Procedure, the General Maritime Law of the United States, and laws supplemental thereto and amendatory thereof.

3. The Vessel is within the District of South Carolina or will be within the District while the action is pending.

4. At all times material hereto, Defendant Vessel was and is a Panamanian flag vessel in navigation upon the high seas, the navigable waters of the United States, and is currently moored at Pier J near Detyen's Shipyard in the Charleston Harbor in Charleston, South Carolina.

5. At all times material hereto, Plaintiff Carver Stevedoring Services, Inc. (hereinafter "Carver") was and is a limited liability corporation incorporated in the state of New York with offices and facilities in Charleston, South Carolina.

6.   On information and belief at all times material hereto, Defendants Imba Maritime, S.A. (hereinafter "Imba"), Coasters Ventures, Ltd. (hereinafter "Coasters"), and Navios Maritime Partners, L.P. (hereinafter "NMP") and one or more are owners of Vessel.

7.   On information and belief Defendants are foreign corporations without any presence within the District of South Carolina for purposes of jurisdiction or service of process.

FACTS

8.   On or about March 30, 2020, Carver Stevedoring employees were aboard the vessel operating the Vessel's No. 1 crane offloading pig iron (hereinafter "cargo").

9.   In order to facilitate the offload, a Bateman model B6TD-1300FC self-contained motorized grapple (hereinafter "grapple"), weighing approximately 28,000 lbs and owned by Carver Stevedoring, was attached to the No. 1 crane.

10.  Upon information and belief, as the crane with the loaded grapple was moved toward the starboard side of the deck, the wire rope of the No. 1 crane parted causing the grapple to freefall.

11.  As the grapple fell it struck the barge and went into the Cooper River along with a load of cargo.

12. Plaintiff received a Letter of Undertaking from The London Steam-Ship Owners' Mutual Insurance Association Limited in the amount of $450,000.00 related to damages arising from the parting of the wire rope on the No. 1 crane only.

13. On or about April 7, 2020, a Carver Stevedoring, employee was operating the Vessel's No. 4 crane offloading pig iron.

14. As the loaded grapple from Hold No. 4 was rising, the wire rope on the No. 4 crane parted and fell approximately 30 feet into the bottom of Hold No. 4, damaging the grapple.

<u>FOR A FIRST CAUSE OF ACTION</u>
(Negligence – Failure to Maintain Wire Rope on No. 1 Crane)

15. Plaintiff restates the above allegations as if set forth herein verbatim.

16. Defendants had a duty to maintain the Vessel and her appurtenances, including the cranes and wire ropes.

17. Defendants materially breached their duty in one or more of the following respects:

    a.  in failing to maintain the appurtenances of the Vessel;

    b.  in failing to maintain the gear aboard Vessel;

    c.  in failing to maintain the wire rope on the No. 1 crane;

    d.  in failing to provide a reasonable maintenance schedule;

    e.  in failing to ensure to reasonable maintenance was performed as required in the operation of cranes;

f.   in failing to warn Plaintiff of the unsafe conditions existing aboard Vessel;

g.   in failing to warn Plaintiff of the unreasonably dangerous conditions aboard the Vessel;

h.   in failing to inspect the cranes' wire ropes;

i.   in failing to maintain proper safety placards as required in the cab of the No. 1 crane;

j.   in acting with reckless disregard in failing to performing routine maintenance to prevent catastrophic damages;

k.   in failing to exercise due care under the circumstances; and

l.   such other acts and/or omissions or breaches of duty which may come to light during the discovery, or which may be proven at trial.

18. As a direct and proximate result of Defendants' negligence, the barge has been damaged, and Plaintiff has incurred damages to its grapple, and will incur additional expenses, including without limitation dockage, salvage, and repair costs.

19. As a direct and proximate result of Defendants' negligence, Plaintiff's contract with Nucor Steel to offload the cargo has been adversely affected resulting in further damages to

Plaintiff.

20. As a direct and proximate result of Defendants' negligence, Plaintiff is entitled to a full award of damages in an amount sufficient to compensate for the losses stated above including without limitation actual damages, *in custodia legis* expenses, attorneys' fees, costs of this litigation, pre-judgment interest, and punitive damages as they may be proven in the trial of this matter.

21. Plaintiff received the Letter of Undertaking described above and is not seeking the arrest and attachment of the Vessel as a result of Defendant's negligence associated with the parting of the wire rope on the No. 1 crane.

<u>FOR A SECOND CAUSE OF ACTION</u>
(Negligence – Failure to Maintain Wire Rope on No. 4 Crane)

22. Plaintiff restates the above allegations as if set forth herein verbatim.

23. Plaintiff is seeking attachment under Rule B and arrest of and maritime lien against the Vessel under Rule C of the Supplemental Admiralty Rules as a result of Defendants' failure to maintain the wire rope on the No. 4 crane.

24. Defendants had a duty to maintain the Vessel and her appurtenances, including the cranes and wire ropes.

25. Defendants materially breached its duty in one or more of the

6

following respects:

a.   in failing to maintain the appurtenances of the Vessel;

b.   in failing to maintain the gear aboard Vessel;

c.   in failing to maintain the wire rope on the No. 4 crane;

d.   in failing to provide a reasonable maintenance schedule;

e.   in failing to ensure to reasonable maintenance was performed as required in the operation of cranes;

f.   in failing to warn Plaintiff of the unsafe conditions existing aboard Vessel;

g.   in failing to warn Plaintiff of the unreasonably dangerous conditions aboard the Vessel;

h.   in failing to inspect the cranes' wire ropes;

i.   in failing to remedy the deficiencies in the wire rope on the No. 4 crane after a previous parting of the wire rope on the No. 1 crane;

j.   in failing to maintain proper safety placards as required in the cab of the No. 4 crane;

k.   in acting with reckless disregard in failing to performing routine maintenance to prevent catastrophic damages;

l.   in failing to exercise due care under the circumstances; and

m.   such other acts and/or omissions or breaches of duty which may come to light during the discovery, or which may be proven at trial.

26. As a direct and proximate result of Defendants' negligence, Plaintiff has incurred damages to the grapple, and will incur additional expenses, including without limitation dockage, and repair costs.

27. As a direct and proximate result of Defendants' negligence, Plaintiff's contract with Nucor Steel to offload the cargo has been adversely affected resulting in further damage to Plaintiff.

28. As a direct and proximate result of Defendants' negligence, Plaintiff has incurred additional dockage fees, delay expenses, and other damages.

29. As a direct and proximate result of Defendants' negligence, Plaintiff is entitled to a full award of damages in an amount sufficient to compensate for the losses stated above including without limitation actual damages, *in custodia legis* expenses, attorneys' fees, costs of this litigation, pre-judgment interest, and punitive damages as they may be proven in the trial of this matter.

PLAINTIFF'S PRAYER

WHEREFORE, by reason of the foregoing, Plaintiff prays that summons issue to all Defendants herein; that the Defendants be made to appear and answer the aforesaid matters; that process in due form of law according to the practice of this Court in cases of Admiralty and Maritime Jurisdiction issue against Defendant vessel, her engines, boilers, tackle, appurtenance, etc., and against the personam Defendants that judgment be rendered for Plaintiff and against the Defendants, for all actual, consequential, punitive damages, attorneys' fees, costs of this litigation, and prejudgment interest, and that judgment be rendered for Plaintiff and against Defendants an amount not less than $1,200,000.00 or as may be proved at trial or which justice requires; that Plaintiff's maritime lien be declared a first priority lien against the Defendant vessel; that Defendant vessel, her tackle, appurtenances, and apparel, etc., be sold by the United States Marshal for this District at public sale and that the proceeds of the sale be applied first to satisfy Plaintiff's maritime lien; and that this Court award any other amount and grant any other relief which may be proved or that justice may require.

RESPECTFULLY SUBMITTED BY:

COOPER & BILBREY, P.C.

By: s/ Albert Bilbrey, Jr.
ALBERT GLEN BILBREY, JR., ESQUIRE
    Federal Court ID 12938
    South Carolina Bar 103799
    agbilbrey@jhcooper.com
JOHN HUGHES COOPER, ESQUIRE
    Federal Court ID 298
    South Carolina Bar 1387
    State Bar of Georgia 185986
    shiplaw@jhcooper.com
JOHN TOWNSEND COOPER, ESQUIRE
    Federal Court ID 10172
    South Carolina Bar 76087
    jtc@jhcooper.com
1476 Ben Sawyer Blvd., Suite 11
Mt. Pleasant, SC 29464
O 843-883-9099; F 843-883-9335

ATTORNEYS FOR PLAINTIFF,
CARVER STEVEDORING SEVICES, INC.

April 8, 2020
Mount Pleasant, South Carolina

<u>V E R I F I C A T I O N</u>

PERSONALLY APPEARED George J. McHugh, who, under penalty of perjury, deposes and says:

a) My name is George J. McHugh, and I am General Manager of Carver Maritime, LLC and Plaintiff in the instant action. I am over 18, of sound mind, and a resident of Berkeley County in South Carolina.

b) I have read the foregoing PLAINTIFF'S VERIFIED COMPLAINT and know the contents thereof and the same are true and correct to the best of my knowledge, except as to the matters therein stated to be on information and belief, and as to those matters I believe them to be true.

c) The sources of my information and the grounds of my belief are, my personal knowledge, and documents in my possession.

d) The above statements are true and correct under penalty of perjury.


Carver Maritime, LLC

George J. McHugh                    April 8, 2020
General Manager                     Date